ARTHUR SELWYN-BROWN, Respondent, *v.* SUPERNO COMPANY, INC., Appellant.

First Department, February 1, 1918.

Corporations — suit to compel issuance of certificates of stock — evidence of ownership — parties defendant — appeal — matters not shown by record — issuance of certificates in excess of capital.

In a suit to compel a corporation to issue to the plaintiff a certificate for a certain number of shares of its capital stock, evidence *held* sufficient to establish that the plaintiff was the owner and entitled to the certificate.

It is well settled that a suit in equity by a stockholder will lie against a corporation to compel it to transfer its stock on the books of the corporation or to issue to him a certificate of stock, where it has wrongfully canceled his certificate.

As the plaintiff was able to prove his ownership and required no relief from one claimed by the defendant to be the owner of said stock, it was not necessary for the plaintiff to make such person a party defendant.

A judgment in favor of the plaintiff should not be permitted to stand where it appears that the defendant would be required to issue to him more than the entire amount of its present capital stock, it appearing from the evidence that its capital has been reduced.

As the record is barren with respect to the circumstances under which the capital was decreased or increased, there can be no adjudication concerning the validity thereof.

A corporation should neither be required to issue certificates in excess of its capital as authorized by law, nor should it be required to duplicate shares lawfully represented by outstanding certificates.

APPEAL by the defendant, Superno Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff,

entered in the office of the clerk of the county of New York on the 15th day of June, 1917, upon the decision of the court after a trial at the New York Special Term.

*Arthur L. Fullman* of counsel [*John G. Pheil* with him on the brief], for the appellant.

*Christian S. Lorentzen,* for the respondent.

LAUGHLIN, J.:

This is a suit in equity to compel the defendant to issue to the plaintiff a certificate for 5,100 shares of its capital stock, and enjoining it and its officers from denying to him the right to vote the stock and the proportionate voice in the conduct of the affairs of the company to which such ownership entitles him. It was brought upon the theory that upon the incorporation of the company on or about the 4th day of June, 1914, one Geoghegan, to whom 20,400 shares of capital stock were duly issued, surrendered his certificate therefor and authorized the defendant to issue three certificates in place thereof, one to plaintiff for 5,100 shares pursuant to a prior promoters' agreement between him and the plaintiff and one Matthews, and that certificates were thereupon issued accordingly, and proper entries of the transfer of the certificate from Geoghegan to plaintiff were entered in the books of the defendant, but that the certificate was not delivered to plaintiff and delivery thereof was refused on demand duly made and he has been excluded from exercising his rights as a stockholder.

The original name of the corporation was Lintross & Wylford Engineering Company, Inc., but the name was duly changed by an order of the Supreme Court made on the 12th day of May, 1915, to Superno Company, Inc., the defendant.

The evidence satisfactorily showed and the trial court found that the original certificate for 20,400 shares of the par value of five dollars each was duly issued to Geoghegan for full value and that, pursuant to an agreement in writing and under seal, made between Geoghegan, the plaintiff and Matthews on the 26th day of May, 1914, in contemplation of the formation of the company, the defendant Geoghegan in consideration of one dollar and other good and valuable con-

sideration, receipt of which was admitted, sold, assigned, transferred and set over unto the plaintiff with full power to transfer the same on the books of the corporation when opened all his right, title and interest in and to 5,100 shares of the capital stock of the company; that when the original certificate was issued to Geoghegan he surrendered it to the company for cancellation, without, however, formally transferring by signing the blank transfer and power of attorney printed thereon, and authorized and directed the officers of the company to issue three certificates in place thereof, one to himself for half the amount, another to plaintiff for one-fourth of the amount, or 5,100 shares, and the third to Matthews for a like amount, pursuant to said agreement of May 26, 1914, which he then produced and delivered to and left with the officers of the company, and that thereupon the original certificate to Geoghegan was canceled and certificates in place thereof were signed by the plaintiff as president of the company pursuant to the authority then verbally conferred by Geoghegan and pursuant to said agreement of May 26, 1914, and left with the treasurer of the company to be signed by him and to be held in escrow by him as treasurer and trustee pursuant to an agreement in writing then and there signed and executed between Geoghegan, the plaintiff and Matthews by which it was to be so held until they agreed that sufficient shares of treasury stock had been sold to enable the company satisfactorily to finance its business, such period, however, not to exceed two years, and by which the respective owners of the stock were to be entitled to vote thereon in the meantime; that these certificates were subsequently signed by the treasurer and held by him pursuant to the escrow agreement; that the plaintiff was not permitted to exercise his right to vote his certificate of stock and that delivery of it to him after the expiration of the escrow agreement was refused and that without his consent or authority from him, but by direction of Geoghegan, it was indorsed by the president and secretary and treasurer of the company as canceled on the 22d day of July, 1915; that the stock and minute books of the defendant showed that the certificate was so issued to the plaintiff and that he held and owned the same on the 4th day of June, 1915, which is the date filled in in the certificate signed in

blank by the plaintiff as president on or about the 4th day of June, 1914, as aforesaid.

The judgment in favor of the plaintiff to the effect that he was the owner and entitled to the certificate of stock is fairly sustained by the evidence. The contention of the appellant that his sole remedy is an action at law is without merit. It is well settled that a suit in equity by a stockholder will lie against a corporation to compel it to transfer his stock on the books of the corporation or to issue to him a certificate of stock where it has wrongfully canceled his certificate. (*Bedford* v. *American Aluminum Co.*, 51 App. Div. 537; *Powers* v. *Universal Film Mfg. Co.*, 162 id. 806; *Travis* v. *Knox Terpezone Co.*, 165 id. 156; affd., 215 N. Y. 260; *Cushman* v. *Thayer Mfg. Jewelry Co.*, 76 id. 365; *Robinson* v. *Nat. Bank of New Berne*, 95 id. 637.)

The defendant pleaded as a defense that Geoghegan was the owner of the stock claimed by the plaintiff and that he forbade the transfer of the stock to the plaintiff and demanded that it be delivered to him. It was neither alleged nor proved that stock representing plaintiff's certificate had been issued to a *bona fide* holder for value or to any one, or that issuance of the certificate to plaintiff would constitute an unlawful duplication of stock. (See *New York & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30, 81.) The plaintiff was able to prove his ownership of the stock and required no relief from Geoghegan with respect thereto and, therefore, it was unnecessary for him to make Geoghegan a party defendant; but if defendant deemed it necessary for its protection against any claim by Geoghegan to have him bound by the judgment it could have interpleaded him. (*Powers* v. *Universal Film Mfg. Co., supra.*)

The defendant further pleaded as a separate and partial defense that on or about the 6th day of April, 1915, its capital stock was reduced from 40,000 shares of the par value of five dollars to 5,000 shares of the par value of five dollars and it offered evidence in support of that defense which was excluded and it excepted to the ruling. Evidence, however, to the effect that the capital stock was so reduced came into the record incidentally and the court found at the request of the defendant that the capital stock had been so reduced.

There is also an intimation in the record that the capital was subsequently increased. The record being barren with respect to the circumstances under which the capital was decreased or increased there can be no adjudication concerning the validity of such decrease or increase of the capital stock. If the judgment were permitted to stand the defendant would be required to issue to the plaintiff more than the entire amount of its present capital stock provided its capital has been lawfully reduced to 5,000 shares. It would, therefore, in any event be necessary to limit the judgment on this record to the plaintiff's rights as of June 4, 1914. That, however, would only result in confusion and would necessarily lead to further litigation to have it determined what his ownership of 5,100 shares of stock as of June 4, 1914, represents at the present time. It does not appear whether or not a certificate of stock was issued in place of the plaintiff's certificate when or before or since it was canceled nor does it appear whether when the capital was reduced or increased a certificate representing the plaintiff's stock or his interest in the increased stock was issued to another. The corporation should neither be required to issue certificates in excess of its capital as authorized by law nor should it be required to duplicate shares lawfully represented by outstanding certificates; and it may, therefore, be essential to a complete determination of the issues to bring in other parties to the end that the judgment to be entered shall finally authoritatively adjudicate these matters and shall not require the unlawful duplication of stock or the issuance of stock in excess of the authorized capital. ( *New York & N. H. R. R. Co.* v. *Schuyler,* 34 N. Y. 30, 79, 80, 81; 17 id. 592; *Mechanic's Bank* v. *N. Y. & N. H. R. R. Co.,* 13 id. 599; *Kellogg* v. *Siple,* 11 App. Div. 465; *Reno Oil Co.* v. *Culver,* 33 Misc. Rep. 718; Thomp. Corp. [2d ed.] §§ 3545, 3550, 3551, 3552, 3558.)

It follows that the judgment should be reversed and a new trial granted, but without costs.

Clarke, P. J., Page and Shearn, JJ., concurred; Scott, J., concurred in result.

Judgment reversed and new trial ordered, without costs. Order to be settled on notice.